# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Criminal Case No. 07-cr-00175-LTB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    ANDRE STANLEY,

      Defendant.

_____

# ORDER
_____

This matter is before me on Defendant, Andre Stanley's, Motions to Suppress Evidence [**Docket ## 38, 44, 55**], and the Government's Responses [**Docket ## 43, 45, 60**].  As a threshold matter, the Government argues Defendant lacks standing to object to the search of the trunk of a 1987 Chevrolet Caprice in which he was riding as a passenger on March 25, 2007.  After consideration of the parties' briefs [**Docket ## 77, 83**], as well as the arguments made and evidence presented at the hearing held on September 28, 2007, I hold Defendant has standing to assert these motions at a hearing on the merits.

## I. BACKGROUND

On March 25, 2007, Aurora Police stopped a 1987 Chevrolet Caprice (the "Caprice") on the belief it contained the fruits of a drug sale.  Defendant was riding in the back seat.  Police impounded the vehicle and obtained a search warrant for further inspection that yielded eighteen grams of crack cocaine in the trunk.

Defendant challenges the initial stop and search of the vehicle, the search warrant issued several hours later, and the subsequent search that resulted in discovery of the crack cocaine. The Government argues Defendant lacks standing to raise such objections because he was not the owner of the Caprice and because he was on parole on conditions that allowed the search of his person, residence, or vehicle at any time by a parole officer.

## II.  STANDING

"The term 'standing,' while commonly used to refer to a defendant's right to challenge a search under the Fourth Amendment, is not to be understood as distinct from the merits of a defendant's Fourth Amendment claim." *United States v. Eylicio-Montoya*, 18 F.3d 845, 850 n.3 (10th Cir. 1994) (citing *Rakas v. Illinois*, 439 U.S. 128, 138-39 (1978)). The proponent of a motion to suppress therefore has the burden of establishing his own personal Fourth Amendment rights were violated by the challenged search or seizure. *Rakas*, 439 U.S. at 130 n.1; *United States v. Dodds*, 946 F.2d 726, 728 (10th Cir. 1991).

In determining whether Defendant has standing, I consider the two substantive factors in a Fourth Amendment analysis: whether Defendant manifested a subjective expectation of privacy in the trunk of the vehicle, and whether society is willing to recognize that expectation as objectively reasonable. *United States v. Knotts*, 460 U.S. 276, 281 (1983); *Eylicio-Montoya*, *supra*, 18 F.3d at 850 (citing *California v. Ciraolo*, 476 U.S. 207, 211 (1986)); *United States v. Soto*, 988 F.2d 1548, 1552 (10th Cir. 1993). If these questions both resolve in Defendant's favor, Defendant has standing to challenge the search of the Caprice. *Eylicio-Montoya*, 18 F.3d at 850. While courts traditionally consider standing concurrently with a motion to suppress, the Government here raises standing as a distinct threshold issue. I therefore limit my analysis to the question of

whether Defendant had a subjective and objectively reasonable expectation of privacy in the trunk of the Caprice, and do not consider whether the search of the Caprice trunk violated that expectation.  *See id.* at 851.

A defendant has a subjective expectation of privacy in the contents of a car when he believes he is rightfully in possession of the vehicle.  *See Soto*, *supra*, 988 F.2d at 1554.  A defendant is not required to produce legal documentation demonstrating a lawful chain of custody from the registered owner to himself; it is enough that he asserts he gained permission from the registered owner.  *United States v. Rubio-Rivera*, 917 F.2d 1271, 1275 (10th Cir. 1990).

Defendant testified he contributed half of the Caprice's $1,000.00 purchase price and had the permission of his fiancée née girlfriend Chantae Thomas—the vehicle's record owner—to use the car.  I find Defendant's testimony in this regard to be credible.  While it is not necessary for the purposes of my standing analysis to determine whether Defendant was in fact a co-owner of the vehicle, Defendant's assertions are sufficient to demonstrate he had a subjective expectation of privacy in the contents of the Caprice's trunk.

Generally, if a defendant is in lawful possession of a car at the time it is stopped and searched, his expectation of privacy in the contents of the car is also objectively reasonable: "Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle."  *Soto*, *supra*, 988 F.2d at 1554; *Rubio-Rivera*, *supra*, 917 F.2d at 1275.  The same analysis applies to a driver-defendant or a passenger-defendant.  *See United States v. Erwin*, 875 F.2d 268, 269–72 (10th Cir. 1989).  Thus, while a passenger *qua* passenger would not normally have a reasonable expectation of privacy in a

vehicle, a passenger who also has permission from a vehicle's owner to use and possess the vehicle has a reasonable expectation of privacy in the vehicle's contents, including the trunk. *See Rakas*, *supra*, 439 U.S. 128, 148–49 (1978).

Defendant is not a typical passenger, however. At the time the Caprice was stopped and searched, Defendant was on parole for Colorado state felony offenses. As a condition of his parole, Defendant agreed "to allow the Parole Officer to search his person, or his residence, or any premises under his control, or any vehicle under his control." Ex. 12 ¶ 4(a). Whether society is willing to recognize an expectation of privacy as reasonable is determined by comparing the degree to which an invasion intrudes upon an individual's privacy with the degree to which such an invasion is needed for the promotion of legitimate governmental interests. *United States v. Knights*, 534 U.S. 112, 118–19 (2001) (citing *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). Defendant's status as a parolee informs both sides of that balance. *Samson v. California*, 126 S. Ct. 2193, 2198 (2006); *Knights*, 534 U.S. at 119.

Parole is an established variation on imprisonment of convicted criminals, but nonetheless resembles imprisonment on the continuum of state-imposed punishments. *Samson*, *supra*, 126 S. Ct. at 2198. Thus, parolees have few legitimate expectations of privacy. *Id*. (citing *United States v. Cardona*, 903 F.2d 60, 63 (1st Cir. 1990)). In addition, parole serves an essential function in the correctional process. *Id*. at 2200. Supervision is necessary not only to ensure an individual reintegrate into society as soon as he is able, but also to protect the community while the parolee completes his sentence. *Id*. Restrictions on the parolee's liberty during this time are vital to both legitimate government interests. *Id*. This "special need" permits a degree of impingement upon privacy that would not be constitutional if applied to the public at large. *Id*. (citing *Griffin v.*

4

*Wisconsin*, 483 U.S. 868, 875, 879 (1987)).

Having recognized that Defendant has a legitimately limited expectation of privacy from search, the question remains whether this limited expectation is nonetheless sufficient to confer standing in this case. I hold it is. When construing the extent of a state parolee's reasonable privacy expectation, the Supreme Court applies the law of the applicable state. *See Samson*, *supra*, 126 S. Ct. at 2199–2200. "Parolee searches are therefore an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law." *United States v. Freeman*, 479 F.3d 743, 747–48 (10th Cir. 2007).

Defendant correctly notes the Colorado State Board of Parole agreement only allows "the *Parole Officer* to search his person, or his residence, or any premises under his control, or any vehicle under his control." Ex. 12 ¶ 4(a) (emphasis added). The Colorado statute authorizing parole likewise limits parolee searches to those searches undertaken by parole officers in furtherance of the purposes of parole. *Colorado v. McCullough*, 9 P.3d 774, 779–81 (Colo. 2000) (citing *Griffin*, *supra*, 483 U.S. at 873; *United States v. Coleman*, 22 F.3d 126, 129–30 (7th Cir. 1994); *Owens v. Kelley*, 681 F.2d 1362, 1368–69 (11th Cir. 1982)). While the parole officer need not be present during a search, the purpose of the search is dispositive. *McCullough*, 6 P.3d at 782 n.13. "In order to satisfy this requirement, the search must be carried out under the authority of a parole officer. . . . [T]hese searches may not be conducted simply as a subterfuge for criminal investigations. They may not be done for the prime purpose of circumventing the ordinary constitutional processes for the convenience of law enforcement officers in the course of their investigation. A parole officer must authorize the search . . . and the search itself must be related to the rehabilitation and supervision of the parolee." *Id.* at 781–82 (citations omitted); *see*

*also Freeman*, *supra*, 479 F.3d at 748 (holding that because the Kansas parole agreement signed by the defendant only allowed searches by parole officers, search by ordinary law enforcement agents could not be justified under the special needs rationale of *Griffin*).

The Government presents no evidence or argument suggesting the purpose of the search of the Caprice was related to anything other than a drug bust. In light of this, Defendant maintained a expectation of privacy sufficient to confer standing to object to the search of the Caprice. *See Freeman*, *supra*, 479 F.3d at 748.

### III.  CONCLUSION

Accordingly, I find Defendant has standing to assert his Motions to Suppress and ORDER a hearing on the merits.

Dated: October   2  , 2007.

                                          BY THE COURT:

                                            s/Lewis T. Babcock  
                                          Lewis T. Babcock, Judge